## Knoxville Tinware and Manufacturing Company v. Howard, et al.

(Decided March 22, 1927.)

## Appeal from Harlan Circuit Court.

1. Sales.—In action for balance due for manufacture of patented articles, instruction limiting recovery to value of articles manufactured and not paid for held erroneous, in absence of dispute as to price agreed on or claim for breach of warranty; measure of damage, if any, being contract price.

2. Trial.—In action for balance due for manufacture of patented articles, instruction requiring finding that articles were to be paid for by defendant when manufactured by plaintiff, held erroneous as intimating that title did not pass unless payment was to be made immediately after articles were manufactured

3. Sales.—Under contract to pay for manufacture of patented articles, title passed on delivery of articles, regardless of time of payment, and court should have instructed jury, in action for balance due, to award plaintiff contract price of all articles made and delivered to defendants at their instance and request and not paid for.

4. Trial.—In action for balance due for manufacture of patented articles, instruction to find for plaintiff, if articles were to be manufactured by plaintiff and paid for by defendants when bills were rendered and articles sold and shipped by defendants, and any so sold and shipped were not paid for thereafter, held erroneous, in absence of issue in pleadings as to terms of contract, though based on defendants' evidence.

5. Trial.—It is error to instruct jury on question not put in issue by pleadings.

6. Trial.—In action for balance due for manufacture of patented articles, wherein real issue under pleadings was settlement of debt by execution of note and delivery to plaintiff of material

and stock on hand, instruction submitting such issue without reference to material and stock was erroneous.

7. Accord and Satisfaction.—Settlement of partnership's account for manufacture of patented articles by execution of note and delivery of stock on hand would be accord and satisfaction, releasing both partners from liability, whether or not partnership was dissolved.

ASHER & SHEHAN for appellant.

LEE & SNYDER for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Plaintiff, the Knoxville Tinware Manufacturing Company, a corporation, sued defendants, E. M. Howard and B. D. Fannon, on a note of $1,000.00, subject to a credit of $500.00, and on an open account for $3,576.25. Howard and Fannon filed separate answers admitting liability on the note, but denying indebtedness on the account, each substantially alleging that they had been partners doing business under the firm name of American Safety Mine Appliance Company and engaged in the manufacture and sale of the Fannon safety powder flask and other articles used by miners, and had arranged with the plaintiff for the manufacture of these articles, they furnishing to it certain materials and supplies; that the business was a losing venture, and on June 14, 1924, they settled with plaintiff for the entire indebtedness due it by the execution to it of the note mentioned and a delivery to it of all the stocks and materials then on hand, and that the partnership was then dissolved; all of this being controverted by reply.

The evidence shows that Fannon was the patentee of the articles named, and that Howard was financing the venture. The plaintiff was a manufacturing concern, and an arrangement was entered into between the parties whereby the different articles were to be manufactured by plaintiff at a fixed price for each. Some material was furnished by defendants, the exact amount of which is in dispute. Defendants maintained their office in plaintiff's building and the manufactured articles were stored in its warehouse. Fannon acted as salesman and visited the mines for that purpose. When he obtained an order he would mail it to defendants' office and it would be given to plaintiff, packed and shipped by it to the custo-

mer and the customer charged with the bill on defendants' books. At the same time plaintiff would enter on its books a charge against the defendant for the goods at the price it charged for manufacture. Fannon also carried a line of samples of other articles manufactured by plaintiff for which he would send orders to his firm. When received these were packed and shipped by plaintiff and charged to the customer on defendants' books and plaintiff charged the defendants with the amount of the bill, less twenty per cent, the manufacturer's charge being eighty per cent of the price received by Fannon. Business was begun in the summer of 1923, and for awhile was promising. There was some delay in securing the necessary materials and defendants were urging plaintiff to greater expedition in their manufacture. Later the business declined and purchasers began returning goods. Howard was a practicing physician at Harlan and gave but little attention to the business except in matters of finance. On June 14th, 1924, he visited Knoxville, as he says, with the avowed purpose of settling the indebtedness of the company and terminating its existence, and at that time the note in suit was executed. The parties differ in their evidence as to the terms of the original contract and as to what occurred at this meeting. Defendants testify that at the beginning all of the parties understood that it was an uncertain venture, and that defendants would only contract for the manufacture of such goods as they could sell, and that it was agreed that the plaintiff would manufacture such articles and charge them upon orders only, and that defendants would not be liable for any unsold manufactured goods, and that the business was conducted in this manner. Howard further says that at the time of the execution of the note he informed plaintiff's president and general manager that he had paid over $7,000.00 for the firm and wanted to dissolve it, and was there for the purpose of settling all just debts due by it, and that he knew nothing about the stock on hand or the amount of plaintiff's account except from its statement, and that it was agreed that they execute a note for $1,000.00 and turn over to the plaintiff all of the stock and material on hand in settlement of its claim; that Fannon at his direction executed the note sued on and the firm was dissolved; that later he paid $500.00 on the note and is liable for the remainder. Fannon corroborated Howard in part as to what occurred at this meeting; says that plaintiff then claimed an indebtedness due it of $1,-

600.00; says he was not present all of the time, but that Howard said he was "loaded" and was going to quit and told him to execute the note. He does not say, however, that this note and material were in settlement of the indebtedness. He says that after Howard left he and Pennington, plaintiff's president, had a conversation in which he said, "Pennington, Dr. Howard has quit, he has laid down; and Pennington said, 'Yes, I believe he has.' I says, 'What am I going to do about the stuff?' and Pennington said, 'I believe you can make this stuff go, you will never make it go by itself, your line is too short, that he was going to take on more jobbing and he would try this.' I said, 'I will try this stuff; I will go out and sell what stuff has been returned back in stock; I will sell that along with your stuff and return you the checks and collections, all except the expense money. If I get up against it you can return me some of that and you can us credit for all I sell.' He says, 'We will do it.' I says, 'I will try it, if we can't do no good I will quit; Dr. Howard has quit.' "

After this conversation it is admitted that Fannon went on the road and for several weeks continued to sell as he had done theretofore, the orders being filled in the same way and remittances made to defendants, some small amounts being for sales after June 14. This was unsuccessful and Fannon quit; though in this Fannon claims he was working for plaintiff. Later a creditor in Knoxville sued defendants on a small account and attached the stock in that place. Plaintiff also attached the stock and it was sold at execution sale, plaintiffs becoming the purchaser at $160.00. Defendants were informed of this proceedings but ignored it. Later this suit was filed.

Plaintiff claims that on the 14th day of June, 1924, the defendants were indebted to it in the sum of $4,-500.00; that it was needing money badly and asked an immediate payment of the account, and that the note was executed as credit thereon. Mr. Pennington, president and manager of plaintiff, testified that practically all of the materials used in the manufacture of these articles were furnished by it; that it was the agreement that the defendants should pay for all of the articles manufactured, but in order to assist them and to get the business started the goods were manufactured and placed in storage for defendant in plaintiff's warehouse and

charged to it and sold in the manner indicated above; that to manufacture the goods after the orders were received delayed shipments, and defendants were insisting on having goods in stock to ship out, and that at their insistence it did manufacture for them a reasonable amount of goods for that purpose; that on June 14th, when Dr. Howard visited him, the defendants were owing on goods that had been shipped something over $1,600.00, though the entire indebtedness for the goods then manufactured was $4,576.00; he explains that the reason all of the account had not been charged on the books was that the plaintiff furnished the defendants storage room for the manufactured articles and only entered the charges as they were shipped for the mutual convenience of both parties; that no goods were manufactured thereafter. He denies any agreement to accept the $1,000.00 note and the stock on hand in settlement of the indebtedness; denies that Dr. Howard stated he would quit; says that thereafter business was conducted in the same way by Fannon; that in order to save expenses the plaintiff had furnished defendants with an office and storage room for their goods, and that after June 14th, it kept the books for them; that after that date Fannon sold a number of bills of goods, the orders for which he produced, and all of which are on defendant's order blanks; that remittances came to the amount of $300.00 after that date, including two or three small checks for goods subsequently sold, all of which were sent to Dr. Howard and which were retained by him; that the manufactured goods were patented articles and that plaintiff had no right to sell them and claimed no interest in them; he also filed as part of his deposition the record of the Tennessee suit in which all of the goods were attached and sold as the property of defendants.

Upon instructions set out *infra*, the jury found for the plaintiff the balance on the note sued on and for the defendants on the account set up in the second paragraph in the petition. Plaintiff appeals.

The court instructed the jury to find for the plaintiff on the note set out in the first paragraph of the petition, and further instructed them as follows:

(1) "If you shall believe from the evidence that by the terms of the contract between the plaintiff and the defendants the powder cans were to be manufactured by the plaintiff and paid for by the

defendants when so manufactured, and that pursuant to said agreement and contract they were manufactured by the plaintiff and not paid for, then you will find for the plaintiff the value of cans so manufactured by the plaintiff and not paid for, if any, by the defendant, unless you shall believe as set out in instruction No. 3, not to exceed the amount sued.

(2) "If you shall believe from the evidence that the powder cans mentioned in the evidence were to be manufactured by the plaintiff and paid for by the defendant when bills were rendered and when said cans were sold and shipped out, and that any number of the said cans so sold and shipped by the defendants were not paid for after same were sold and shipped away from the factory, then you will find for the plaintiff the value of the cans so sold and shipped, if any, not to exceed the amount sued for in the petition. And unless you so believe you will find for the defendant.

(3) "If the jury shall believe from the evidence that on or about June 14, 1924, the defendant, Dr. E. M. Howard, made settlement with the plaintiff, and by the terms of the said settlement he paid off and discharged all claims of the plaintiff against the defendant company by executing the note referred to in the evidence, and that by the terms of the agreement, if any there was, the plaintiff accepted said note in full settlement of all matters between the plaintiff and the defendant, and that the defendant, Dr. E. M. Howard, on said date withdrew from said partnership with the defendant B. D. Fannon and so notified the plaintiff company through its president, Mr. Pennington, then you ought to find for the defendant."

The first instruction is erroneous in that it restricts plaintiff's recovery to the *value* of the cans manufactured and not paid for. There is no dispute as to the price agreed on for the manufacture of these articles and no claim for a breach of warranty. If plaintiff is entitled to recover at all the measure of its damage is the contract price and not the value of the manufactured cans. Pratt v. Morris, 87 S. W. 783. This instruction also required the jury to believe that under the contract the powder cans were to be manufactured by plaintiff and paid for by the defendant when so manufactured. The

jury may have construed this to mean that the title did not pass unless it was agreed that the payment was to be made immediately after the articles were manufactured, and that in the absence of an agreement to pay at that time title in the articles in stock remained in plaintiff, and in this respect the instruction was confusing.

There was no issue in the pleadings as to the terms of the contract, and under it title passed upon delivery regardless of the time of payment, and under the issues then made by the pleadings the court should have instructed the jury that if they shall believe from the evidence that the plaintiffs manufactured and delivered to the defendant the cans in question at their instance and request, they should find for plaintiff the contract price of all such cans so made and delivered and not paid for, and also have given a definition of delivery.

The second instruction was unauthorized. While there was an issue in evidence on this question and the instruction was based on defendant's evidence, there was no issue in the pleadings as to the terms of the contract, and it is well settled that it is error to instruct the jury upon a question not put in issue by the pleadings. Edge v. Ott, &c., 151 Ky. 673; Bowling v. Archer, 157 Ky. 540; L. & N. R. R. Co. v. Moore, 150 Ky. 692; Stiles v. Lile, 203 Ky. 225. This instruction also erroneously stated the measure of damage as set out *supra*.

The real issue under the pleadings was as to the alleged settlement of June 14th. It was presented by the third instruction, but it will be observed that while defendants pleaded a settlement of plaintiff's debt by the execution of the $100.00 note and delivery to plaintiff of the material and stock, that instruction omits all reference to the material and stock. In another trial it will be corrected in this particular.

It is strongly urged that the court should have defined a partnership and have authorized a recovery against the partners severally. However, the issue joined was whether or not this account was settled on June 14th. If it was setled at that time by the execution of the note in question and a delivery of the stock on hand, this was an accord and satisfaction, and both partners were released from other liability, and in that event it is no concern of plaintiff whether or not the partnership was dissolved.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.