## Louisville & N. R. Co. v. Harrington.

(Decided Nov. 7, 1935.)

ASHBY M. WARREN, J. R. LAYMAN and LAYMAN, ASHCRAFT & MORGAN for appellant.

EDRINGTON & REDMON, J. D. HARDIN and M. T. WHITWORTH for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

Appellee brought this suit to recover for certain personal injuries sustained by him by falling while alighting from appellant's passenger train at Brandenburg, Ky., at about 12 o'clock on the night of June 10, 1934. We will refer to the parties as plaintiff and defendant, according to their respective status in the circuit court.

As grounds of recovery the petition alleged, in substance, that the defendant so carelessly, recklessly, and

negligently operated, controlled, managed, and propelled its train as to cause the plaintiff to be violently thrown and jerked therefrom to the ground and pavement, thereby resulting in the injuries complained of.

Defendant filed its answer traversing the allegations of the petition and pleaded contributory negligence. A jury trial resulted in a verdict and judgment thereon for $1,000, and the defendant company has appealed.

Numerous grounds of reversal are urged, among which is that plaintiff's testimony failed to show any negligence on the part of the defendant and further that plaintiff's injuries were sustained as result of his own negligence.

In describing how the accident occurred, plaintiff said:

"Well, gentlemen of the jury, as we was coming down—when the train whistled for Brandenburg Station we drove in the station, the flagman come out in the vestibule and went down—I don't know how many steps before we got to the depot—he went down and raised the trap door and got down on the steps and as we come up near the depot Mr. Pack went down the steps and when the train got up near the depot he got off, so I went down—I was standing up in the vestibule and I went down and started off—of course the train was running—I just don't know how many feet up further before he got off, so I thought the train was getting safe to get off, so I stood there—the flagman said to me, 'All right, Joe, get off.' * * * So I went on down and got off—I thought the train was safe when I got off and when I stepped off she throwed me— * * *."
He was further asked and answered as follows:

"Q. Now, why did you get off of the moving train? A. Well sir, I thought the train was perfectly safe—I thought it was safe to get off.

"Q. Why did you think that? A. Why did I?

"Q. Yes sir, why did you think that? A. I thought it had stopped enough for a fellow to get off—I thought it was safe to get off.

"Q. Did the flagman say it was safe? A. He said, 'Joe, you can get off.' "

The court sustained objections to the last above question and answer and admonished the jury not to consider the answer, to which ruling of the court plaintiff objected and excepted. We think the court's ruling was proper, in view of the fact that plaintiff had answered the question a number of times, and in each instance gave, as his reason for getting off the train at the time he did, that he thought it was safe to get off, and the question relating to what the flagman said was suggestive. He did not say that he thought it was safe to alight from the train because of the flagman's statement, until the idea was suggested to him by the leading question as above indicated. He further testified that at the time he got off the train it was still running and he did not know what speed it was making, and that he paid no attention to the train when he got off because he thought it was safe to get off. It was further shown by his evidence that previous to the accident he had been in the employment of the railroad company for about fourteen years and had had considerable experience in riding trains. In view of his experience, no doubt he fully appreciated the danger of alighting from a moving train. It was his duty to exercise reasonable care for his own safety, notwithstanding the suggestion of the flagman to get off. He said that the flagman had no lantern and it was dark at the place where he stepped off, but he does not complain that he was caused to fall by reason of the darkness, but he attributes the cause of the fall to the fact that the train was moving.

It is insisted that plaintiff relied entirely upon the judgment of the flagman in alighting from the train at the time and place he did so. But it is obvious from his own testimony that he relied upon his own judgment with respect to the safety or advisability of alighting from the train, instead of the suggestion of the flagman. If it be conceded that he was induced by the suggestion of the flagman to alight from the train, he was not thereby relieved of the duty of observing care for his own safety.

In Durham v. Louisville & N. R. Co., 29 S. W. 737, 738, 16 Ky. Law Rep. 757, the plaintiff alleged in his petition, in substance, that while the train was moving, one of the defendant's employees, though knowing that it was unsafe for plaintiff to alight from the train, directed him to do so; and it was further alleged that it was very dark and that being led to believe that the

train was at the street where plaintiff desired to get off, and that it was a safe place to alight, plaintiff got off, and that he was injured while doing so. It was held that the petition was insufficient in not showing that the injury was caused by plaintiff's alighting at an unsafe place and that he was not negligent in getting off the train when he did notwithstanding he was directed to do so. The court said:

> "While we think the appellant stated certain facts from which we might impute negligence to the company, yet he fails to show that the injury was caused by reason of his alighting from the train at an unsafe or dangerous place, or that his getting off in the dark and under the circumstances surrounding him was not obviously dangerous, and his own conduct reckless and imprudent."

See, also, Louisville & N. R. Co. v. Whitaker, 222 Ky. 302, 300 S. W. 912.

We here have a situation analogous to the facts in the Durham Case, supra. Conceding, without deciding, that plaintiff's petition stated the cause of action he attempted to prove, his evidence fails to sustain it and an allegation not sustained by proof is as fatal as proof without an allegation. Plaintiff's evidence does not show the facts required to be alleged in the petition in the Durham Case, supra. Though it be conceded that the flagman was imprudent in suggesting that the plaintiff alight from the train at the time and place he did, plaintiff's own testimony definitely shows that he was guilty of contributory negligence, but for which he would not have been injured.

We conclude, therefore, that the court erred in failing to direct a verdict for defendant.

These conclusions render it unnecessary to pass on other questions raised, all of which are reserved.

The judgment is reversed and remanded for proceedings consistent with this opinion.